# EXHIBIT 1

Michele Anderson-West (9249)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com
*Attorneys for Plaintiff*

**IN THE THIRD JUDICIAL DISTRICT COURT
SALT LAKE COUNTY-SALT LAKE CITY**

| | |
|---|---|
| **BLAIR LAMPE, an individual,**<br><br>  Plaintiff,<br>v.<br><br>**DELTA AIR LINES, INC., a foreign corporation,**<br><br>  Defendant. | **COMPLAINT** |

Plaintiff Blair Lampe, through her undersigned counsel, complains against Defendant Delta Air Lines Inc. for causes of action arising out of violations of the Civil Rights Act of 1964, as amended 42 USC §2000e, et seq. ("Title VII") and the Equal Pay Act, 29 USC §29, et seq. ("EPA"), alleging as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Blair Lampe ("Ms. Lampe" or "Plaintiff"), at all times relevant herein, resided in Salt Lake County, Utah.

2. Defendant Delta Air Lines Inc. ("Delta" or "Defendant") is a for profit corporation doing business in Salt Lake County, State of Utah.

3. Ms. Lampe exhausted her administrative remedies required under Title VII, having filed two charges of discrimination with the Equal Employment Opportunity Commission

1

("EEOC") covering the causes of action within this complaint. One charge was filed on August 11, 2021 for which Lampe received a Notice of Right to Sue ("NRTS") dated October 27, 2021. Ms. Lampe filed a second charge with the EEOC on or around September 17, 2021 for which she received a NRTS dated October 27, 2021.

4. This action is commenced within 90 days of Ms. Lampe's receipt of the two NRTS.

5. The employment practices alleged to be unlawful were committed in Salt Lake County, State of Utah, which is within the jurisdiction of this Court pursuant to Utah Code Ann. §78A-5-102.

6. Venue is proper in this Court pursuant to 78B-3-307.

7. At all times relevant herein, Delta acted by and through its agents, servants, and employees, each of whom acted, at all times relevant herein, in the course and scope of their employment with and for Delta at all times relevant herein.

## FACTUAL ALLEGATIONS

8. Lampe is female and has worked for Delta since June 2009.

9. At all times relevant herein, Lampe worked for Delta in its Ground Services Equipment department ("GSE") as a Ground Maintenance Mechanic ("GMM").

10. Delta has discriminated against Ms. Lampe on the basis of her sex as to her pay by paying her less than similarly situated male employees.

11. Delta has discriminated against Ms. Lampe by passing her over for promotions for which she was more qualified and instead, Delta hired less qualified men.

2

12. Delta has repeatedly sought to justify hiring less qualified male employees instead of Ms. Lampe asserting that Ms. Lampe lacked experience working on "specialized" equipment. Specialized experience can only be gained through assignment.

13. Ms. Lampe routinely asked to be assigned specialized equipment and brought the discrepancy in assignments to her managers and HR. For example, between August 15, 2020 and August 11, 2021, 22.69% of Ms. Lampe's assigned hours were specialized (after working for Delta 12 years) compared to a male employee who was assigned specialized experience 52.1% of the time (after working for Delta less than 6 months).

14. In October 2020, Delta discriminated against Ms. Lampe on the basis of her sex when it hired a male employee for a management position for which Ms. Lampe was more qualified than the male employee.

15. Also, at that time, Ms. Lampe worked for Delta approximately 11 years compared to the less qualified male employee who worked for Delta less than one year.

16. Delta did not offer Lampe the promotion because she is female.

17. Lampe is the only female working for Delta in a technician mechanical role among hundreds of men.

18. Delta has never promoted a woman within GSE to a management or Lead GMT position.

19. Delta has never hired a female Technical Analyst in GSE and has only hired one female GSE engineer company wide.

20. If Delta promoted Ms. Lampe instead of the less qualified male employee for the October 2020 promotion, her wage would have gone from $58,801 per year to between $120,000

and $161,000 per year. And, Ms. Lampe's 401K contribution would have gone from $11,760 per year to $24,000-$32,000 per year thus giving her a substantial increase in her retirement.

21. Delta discriminated against Ms. Lampe on the basis of her sex again in December 2020 when Ms. Lampe interviewed for a position of GSE Regional Contracts Manager.

22. Ms. Lampe exceeded Delta's preferred requirements for the position which included, but were not limited to, having knowledge of GSE maintenance functions, GSE experience and a bachelor's degree.

23. Delta offered the position to a less qualified man with absolutely no mechanical experience and with no experience working in GSE notwithstanding Lampe being more qualified than her male counterparts and exceeding the job qualifications.

24. If Delta promoted Ms. Lampe instead of the underqualified male employee for the December 2020 promotion, her wage would have increased from $58,801 per year to between $120,000 and $161,000 per year. Further, Lampe would have contributed $500.00 to $800.00 more per paycheck to her 401K, resulting in an increase of $15,123 to $25,008 in retirement benefits as of the date of this complaint.

25. Like she had before, Ms. Lampe went to HR and told HR that Delta was continuing its pattern and practice of sex discrimination by repeatedly hiring male candidates who were less qualified than her.

26. Upon information and belief, Delta has not investigated Ms. Lampe's allegations.

27. Delta has also discriminated against Lampe because of her sex in assigning out of town maintenance projects.

4

28. Salt Lake City GSE is responsible for maintenance and support at a number of regional outstations, which provide excellent opportunities to work on specialized equipment.

29. Delta's policy for "Out of Town Maintenance Trip Procedures" clearly defines the process of personnel selection for being assigned out of town maintenance trips. Therein, it states that a manager must announce the trip, gather names of all interested parties and then choose personnel based on qualifications, highest seniority, and those with the least amount of prior trip opportunities.

30. Notwithstanding the SOP, after specifically requesting outstation assignments, and bringing her concerns to HR, Ms. Lampe was not asked to work at outstations on par with her male counterparts.

31. Delta has also discriminated against Ms. Lampe as to the issuance and maintenance of security badges-which discrimination negatively affected Ms. Lampe's ability to be promoted. Security badges are required for out-of-town maintenance trips.

32. In October 2020, November 2020 and December 2020 Delta issued and maintained security badges to its male employees working in GSE but would not issue or renew Lampe's security badges despite her repeated requests to do so.

33. As a result of Delta's discrimination against Ms. Lampe as to the security badges, Ms. Lampe again was denied the same access as her male counterparts to work on specialized equipment.

34. In November 2020, Delta asked Ms. Lampe to be a Training Coordinator. Lampe accepted and in return, Delta paid Lampe her regular hourly wage of $28.27 per hour compared

5

to      previous and concurrent male Training Coordinators in GSE, whom Delta paid at least $46.72 per hour.

35. The job duties and responsibilities for Training Coordinator were the same for Ms. Lampe and the men who held the job before her. The income for Ms. Lampe and the men should have been the same. Instead, Delta paid Ms. Lampe at least $18.71 per hour less than her male counterparts for the same job.

36. In March of 2021, the role of GSE Environmental and Safety Coordinator opened for expressions of interest. Lampe put in for and was given the role, which came with a multitude of additional responsibilities but without any increase to her pay or benefits. Lampe continued to make $28.27 per hour compared to her male predecessor in the role who made $45.86 per hour.

37. In March 2021, Delta again discriminated against Lampe as to her application for a promotion to be Lead GMT. One of the qualifications listed for the job was achieving a "satisfactory score on entry tests structured to determine ability to perform required tasks."

38. As part of the interview process, Ms. Lampe was required to take a BMARS qualifying test that the other candidates (all men) were not required to take.

39. Ms. Lampe was made to take the qualifying test because of her sex. There was no other reason for her alone to be made to take the test. And further, Ms. Lampe had already taken and passed the test two times.

40. Nonetheless, Ms. Lampe took and passed the qualifying test and interviewed for the position.

41. Delta did not hire Ms. Lampe and instead, gave the position to a man with less experience than Ms. Lampe and who was less qualified for the position.

42. The man was less qualified for a Lead position because he lacked the management experience, organizational skills, conflict resolution skills and overall administrative skills Ms. Lampe had.

43. Less than two months later, the male employee whom Delta gave the promotion quit, saying he was "not the right person for the job."

44. Although Ms. Lampe's manager told her she was "next in line" for the Lead GMT position, Delta did not offer Ms. Lampe the position, and instead, kept the position vacant.

45. Delta reposted the position in August 2021 and again did not require any of the male candidates to take the BMARS aptitude test prior to interviewing.

46. Ms. Lampe had taken and passed the BMARS mechanical aptitude test three times in the past and interviewed again for the Lead GMT position in August 2021.

47. Delta hired a less qualified male employee for that Lead GMT position.

48. Also in August 2021, Ms. Lampe applied for several GMT positions. When the GMT positions opened up, the Director of GSE sent department managers a diagram of the SOP for the hiring process. Therein, it states that every GMT candidate must take and pass the BMARS mechanical aptitude test prior to setting up an interview.

49. Though Delta forced Ms. Lampe to take the test three times despite previously passing it, multiple male candidates were fast-tracked to set up and conduct interviews prior to taking and passing the test even once.

50. After 12 years of working for Delta, Ms. Lampe earns between 30% and 50% less than her similarly situated male counterparts.

## FIRST CAUSE OF ACTION
*Discrimination*

51. The preceding paragraphs are incorporated herein by reference.

52. Ms. Lampe is female and is a member of a protected class pursuant to Title VII.

53. At all times relevant herein, Delta was Ms. Lampe's employer as contemplated in Title VII.

54. At all times relevant herein, Ms. Lampe was Delta's employee under Title VII.

55. Ms. Lampe has always met or exceeded Delta's legitimate expectations.

56. Ms. Lampe suffered adverse employment actions when Delta did not pay her the same as her male counterparts for the same work, under the same or similar conditions.

57. Ms. Lampe suffered adverse employment actions when Delta promoted male employees with less experience than Ms. Lampe.

58. Delta treated Ms. Lampe less favorably than similarly situated male employees which adversely affected the terms and conditions of her employment with Delta.

59. As a result of Delta's discrimination, Ms. Lampe has suffered damages that include, but are not limited to lost wages and other benefits of employment and is entitled to recover those damages in an amount between $60,000 and $300,000 which will be determined at trial.

60. Delta's actions in discriminating against Ms. Lampe was willful, calculated and intentional, and with disregard to Ms. Lampe's protected rights.  As such, Delta is liable for punitive damages, costs, attorneys' fees and other damages to be determined at trial.

## SECOND CAUSE OF ACTION
*Equal Pay Act*

61.     The preceding paragraphs are incorporated herein by reference.

62.     When working in the capacity of Training Coordinator, Ms. Lampe performed work that was substantially equal to the male employees who held the job previous to her.

63.     Delta paid the GSE Training Coordinators who are male, $46.72 per hour while it only paid Ms. Lampe $28.25 per hour even though the job required the same skill, duties, supervision, efforts and responsibilities.

64.     When working in the capacity of Environmental and Safety Coordinator, Ms. Lampe performed work that was substantially equal to the male employees who held the job previous and concurrent with her, having the same skills, duties, supervision, efforts and responsibilities.

65.     Delta paid the Environmental and Safety Coordinators who were male not less than $46.72 per hour while it only paid Ms. Lampe $28.52 per hour.

66.     As a result of Delta paying Ms. Lampe less than her male counterparts, Ms. Lampe has damages of lost wages, profit sharing and other benefits of employment, which amount will be fully calculated at trial.

67.     Delta's conduct in not paying Ms. Lampe equal to its male employees was intentional and willful and done with disregard to Ms. Lampe's protected rights and as such, Delta is liable for liquidated damages, costs, attorneys' fees and other damages to be determined at trial.

WHEREFORE, Plaintiff asks the Court for the following relief:

1. Judgment in favor of Plaintiff and against Defendant for all causes of action;

2. For compensatory damages,

3. For punitive damages,

4. For prejudgment and post judgment interest,

5. For costs and attorneys' fees,

6. For other such relief that is fair and just.

Dated this 11th day of January 2022.

    /s/ Michele Anderson-West
Michele Anderson-West
STAVROS LAW P.C.
*Attorneys for Plaintiff*